UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CASE NO.

**WILLOW BEND VENTURES, L.L.C.** 17-11178
SECTION A
DEBTOR CHAPTER 11

## **MEMORANDUM OPINION**

Willow Bend Ventures, L.L.C. ("Debtor") filed Objections to Proofs of Claim 4 and 5 filed by the Louisiana Department of Revenue ("LDR"). P-53 and 55. Cross Motions for Partial Summary Judgment filed by Debtor and LDR came before the Court on May 29, 2018. P-214 and 216.

### I. Summary Judgment Standard

Summary Judgment is proper when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1079 (5th Cir. 1995); F.R.C.P.. 56(c); F.R.B.P. 7056(c). The Court must view the evidence introduced and all factual inferences in the light most favorable to the party opposing summary judgment. *Hightower v. Texas Hospital Ass'n,* 65 F.3d 443, 447 (5th Cir. 1995). The movant bears the burden of proving an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Insurance Co.*, 340 F.3d 233, 235 (5th Cir. 2003).

### II. Undisputed Facts

By stipulation, Debtor and LDR have agreed to the following facts:

Debtor owns and operates a clay pit located in Edgard, Louisiana. P-221, ¶ 3. Debtor's primary business is the sale of dirt, clay, fill, and other aggregate materials to contractors. *Id.* at ¶ 2.

Debtor excavates clay and then processes it to the moisture content prescribed by its customers. *Id.* at ¶ 4.

Debtor did not file Louisiana sales and use tax returns for the period of January 31, 2009, to June 30, 2012. *Id.* at ¶ 16. LDR performed audits of Debtor's sales and use tax liability for the tax periods January 31, 2009, through June 30, 2012, and January 1, 2014, through April 30, 2017. (Collectively "Taxable Periods") *Id.* at ¶6.

As a result of the audits, LDR assessed sales and use taxes for the Taxable Periods in the amounts contained in proofs of claim nos. 4 and 5 as amended. *Id* at ¶7,8, and 9.

On December 30, 2013, LDR filed suit against Debtor in state court for sales and use taxes assessed from January 31, 2009, to June 30, 2012. The suit sought taxes, penalties, and interest in the total amount of $1,109,643.21, plus post-petition interest. P-221, Exh. 9. The suit is still pending.

On May 9, 2017, Debtor filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code, and LDR's state suit against Debtor was stayed.

Proof of claim 4 as amended seeks taxes for the period of January 31, 2014, through March 31, 2017, of $55,047.31; $4,163.96: and $25,179.36 in penalties. *See* Amended Proof of Claim 4-5, P-221, Exh. 2.

Proof of Claim 5 as amended seeks sales taxes of $760,334.55; interest of $320,851.68; and penalties of $228,114.96. It also requests an unsecured claim of $32,905.12, comprised of use taxes equal to $19,169.09; interest of $7,975.09; and penalties of $5,760.94. P-221, Exh. 3.

Debtor Objected to Claims 4 and 5 as amended. P-53 and 55. The parties filed the instant Cross Motions for Partial Summary Judgment.

After the parties filed their Cross Motions for Summary Judgment, LDR filed Amended Claim 5-3 asserting a claim of $1,077,786.89 and a second, unsecured claim of $316,778.36 or $760,334.55 in taxes; $317,452.34 in interest through April 24, 2018; and $228,125.18 in penalties through April 24, 2018.

### III. Law and Analysis

The parties seek partial summary judgment on five (5) disputed legal issues:

1) The standard of construction for La.R.S. 47:301(10)(g);

2) The burden of proving application of La. R.S. 47:301(10)(g);

3) The inclusion of freight charges in the "sales price" under La. R.S. 47:301(13)(a);

4) The burden of proving an illegal tax; and

5) Liability for uncollected sales taxes.

**A. The Standard of Construction for La. R.S. 47:301(10)(g)**

The proper construction of La. R.S. 47:301(10)(g) depends in large part on whether the provision is an exemption or exclusion. The Louisiana Supreme Court in *Bridges v. Nelson Industrial Steam Co.*, 2015-1439 (La. 5/3/16), 190 So.3d 276, explained the difference:

> According to the leading Louisiana sales tax treatise, a "tax exemption is a provision that exempts from tax a transaction that would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not to tax a certain transaction that is clearly within the ambit and authority of the taxing statues to tax." Bruce J. Oreck, *Louisiana Sales & Use Taxation* (2d ed. 1996), §3.1. An exclusion, on the other hand, "relates to a transaction that is not taxable because it falls outside the scope of the statute giving rise to the tax, *ab inito*. Transactions excluded from the tax are those which, by the language of the statues, are defined as beyond the reach of the tax." *Id*. Oreck's definitions have been widely adopted by Louisiana courts. ...

> Tax exemptions are strictly construed in favor of the State and "must be clearly and unequivocally and affirmatively established" by the taxpayer. *Vulcan Foundry, Inc. v. McNamara*, 414 So2d 1193, 1197 (La. 1982). Exclusions, on the other hand, are "construed liberally in favor of the taxpayers and against the taxing authority." *Wyesco of Louisiana L.L.C. v. East Feliciana Parish School Board*, 2000-1322, p 5 (La.App. 1 Cir. 9/28/01), 809 So.2d 401, 404, citing *Tarver v. World Ship Supply, Inc.*, 615 So.2d 423, 426 (La.App. 4 Cir. 1993), *writ denied*, 616 So.2d 672 (La. 1993).

*Id.* at 280 (quoting *Harrah's Bossier City Inv. Co., LLC v. Bridges*, 09-1916, pp. 9-10 (La. 5/11/10), 41 So.3d 438, 446).

LDR argues that because Louisiana could have taxed these transactions, their elimination under subsection 10(g) is an exemption from taxation. Debtor argues that the provision excludes the transactions.

Based on existing jurisprudence, the State might have taxed the transactions in question. However, it clearly elected to forebear from this option. By narrowly defining "retail sale," the State excluded sales of movables intended for resale to the United States government. The transaction was removed from taxation *ab initio* because the tax is only imposed on retail sales. For this reason, the Court finds that the provisions of La. R.S. 47:301(10)(g) are exclusions to be construed liberally in favor of Debtor.

LDR cites as authority for its position *Bridges v. Cepolk Corp.*, 2013-01051 (La.App. 3 Cir. 2/12/14), 153 So.3d 1137. In *Cepolk*, a heating and air conditioning contractor for the United States military ("Cepolk") installed heating and air conditioning systems at Fort Polk and continued to maintain those systems after installation. Cepolk claimed that equipment and materials used in the maintenance of the systems were not subject to taxation because they was purchased with the intent to resell to the United States. LDR argued that the contract was for construction and the materials

or equipment were not for resale but instead consumed in connection with the services and labor provided. Ultimately, the Circuit Court agreed, finding that the taxpayer was a contractor and the tangible property it used in connection with its services was not acquired for resale but consumed as part of its construction services. In its opinion, the Court referred to La. R.S. 47:301(10)(g) as an "exemption" from taxation.

The *Cepolk* decision turned on Cepolk's status either as a contractor under La. R.S. 47:301(10)(a)(i) or a dealer under La. R.S. 47:314. If Cepolk was a contractor, the movables used in the services it provided were consumed rather than sold.[1] If it were a dealer the movables might be subject to resale. Only if Cepolk were a dealer, would 47:301(10)(g) apply. Because the Court found Cepolk was a contractor consuming movables in connection with its services, the application of La. R.S. 47:301(10)(g) ceased to be relevant to the decision. Therefore, any references to La. R.S. 47:301(10)(g)'s character as an exemption versus exclusion cannot be considered part of the Court's holding nor are they persuasive.

In *Odebrecht Construction Inc. v. Department of Revenue*, 2015-0013 (La.App. 1 Cir. 9/18/15), 182 So.3d 132, a case factually close to the one at hand, the First Circuit reviewed an appeal from the Louisiana Board of Tax Appeal. The case involved a subcontractor for the Corps of Engineers ("Corps"). The subcontractor claimed that purchases of clay were excluded from sales tax under La. R.S. 47:301(10)(g). There was no question that the purchases involved movables and that title to them passed to the Corps on delivery by the taxpayer. The question before the Court was whether or not the subsection was an exemption or exclusion. The Board of Tax Appeal held:

---

[1] *See Claiborne Sales Co. v. Collector of Revenue*, 99 So.2d 345 (La. 1957); *Louisiana Paving Co., Inc. v. St. Charles Parish Public Schools*, 604 So.2d 593 (La.App. 5 Cir. 1992), *writ denied*, 605 So.2d 1370 (La. 1992).

> [Section] 301(10) involves the definition of a retail sale and paragraph (g) specifically defines a category of transactions that are not included within the definition of "sale at retail." This paragraph operates as [an] exclusion not as a tax exemption. Since the subsection at issue is an 'exclusion' and not a tax exemption, therefore any question about the applicability of the exclusion must be resolved in favor of the Taxpayer.

*Id.* at 136.

The First Circuit agreed finding:

> La. R.S. 47:301(10)(g) expressly defines a category of transaction that are not included within the definition of a "sale at retail," *i.e.* the sale of moveable property intended for future sale to the United States government with title to such property is transferred to the United States government prior to the incorporation of that property into a final product. The Department's argument that Section 47:301(10)(g) is an exemption cannot be reconciled with the language of the statute.

*Id.* at 143.

In *Bridges v. Nelson Industrial Steam Co.*, 2015-1439 (La. 5/3/16), 190 So.3d 276, the Louisiana Supreme Court considered whether La. R.S. 47:301(10)(a)(i)(c)(i)(aa) was an exemption or an exclusion. Commonly referred to as the "further processing exclusion," the Court considered whether the provision should be construed liberally in favor of the taxpayer or strictly in favor of the State. In *Nelson* as in this case, LDR argued that every sale is subject to taxation unless exempted; therefore, the provision not to tax must be an exemption. A plain reading of the defined term "retail sale" resulted in a ruling that the transaction was excluded from retail sales. Therefore, the statute created an exclusion, not an exemption.[2]

The foregoing decisions establish that when a type of transaction is removed from the definition of transactions subject to tax, the effect is to exclude. In this case, sales to the Corps or

---

[2] *See also Graphic Packaging Intern., Inc. v. Lewis*, 50,371 (La.App. 2 Cir. 2/3/16), 187 So.3d 499, 509 (The language "does not include" in section 301(10)(c)(i)(aa) is clear and unambiguous language that it is an exclusion.).

6

its agents are not considered retail sales. As a result, they are not included in the category of transactions subject to tax. Although LDR argues that they are exempted rather than excluded, to be exempt from tax would require that the transaction first be subject to tax. The Legislature did not elect this option. Therefore, the Court holds that La. R.S. 47:301(10)(g) is an exclusion to be liberally construed in favor of Debtor.

### B. The Burden of Proving Application of La. R.S. 47:301(10)(g)

LDR's claims are a result of audits conducted on Debtor's business operations from January 31, 2009, through June 30, 2012, and January 1, 2014, through April 30, 2017. The audits uncovered transactions between Debtor and third parties for the sale of clay and for which sales tax was not paid. Debtor asserts the transactions fall within the confines of La. R.S. 47:301(10)(g), are not taxable, and LDR bears the burden of proving they are taxable. LDR claims that all transactions by a dealer are presumed to be retail sales. Therefore, Debtor bears the burden of proving the transactions are excluded.

The burden of proof is a substantive aspect of a claim. As an essential element of the claim itself, the parties are entitled to the burden of proof normally imposed. *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 120 S. Ct. 1951, 147 L.Ed.2d 13 (2000). Thus, state law controls which party bears the burden of proof on the issues.

Generally, the burden is on a plaintiff in a civil action to establish a *prima facie* case. The opposing party need not supply any countervailing evidence until this is done. If the plaintiff fails, his cause of action will be defeated. If a plaintiff succeeds in establishing a *prima facie* case, the burden will shift to the defendant to overcome the initial allegations then back to the plaintiff to prove his case by preponderance of evidence. Once plaintiff proves his case by a preponderance of

evidence, the burden returns to the defendant to eliminate an element of the claim or prove a defense by evidence sufficient to overcome plaintiff's proof. *See Dupre v. Joe's Riverside Seafood, Inc.*, 578 So.2d 158 (La.App. 1 Cir. 1991); *Levingston Supply Co. v . Basso*, 164 So.2d 141 (La.App. 1 Cir. 1964); *Bryant v. Johnson*, 140 So.2d 758 (La.App. 2 Cir. 1962); *Laird v. Travelers Indem. Co.*, 236 So.2d 561 (La.App. 4 Cir. 1970); *State Board of Ethics v. Ourso*, 964 So.2d 1059 (La.App. 1 Cir. 6/8/07), *writ denied,* 964 So.2d 941 (La. 10/5/07). Thus the burden of proof shifts back and forth between the parties as a trial progresses. *State Board of Ethics v. Ourso*, 2006-1467 (La.App. 1 Cir. 6/8/07), 964 So.2d 1059, *writ denied,* 2007-1387 (La. 10/5/07), 964 So.2d 941.

"[T]ax laws are liberally interpreted in favor of the taxpayer." *Parish of East Baton Rouge v. Kosay Enterprises, Inc.*, 368 So.2d 178 (La.App. 1 Cir. 1979) (citing *Colonial Pipeline Co. v. Mouton*, 228 So.2d 718 (La.App. 1 Cir. 1969), and *Higgins, Inc. v .Walker*, 129 So.2d 840 (La.App. 1 Cir. 1961)). In all tax disputes the State bears the initial burden of establishing that the activity or transaction in question is subject to a tax.

LDR argues that La.R.S. 47:301 *et. seq.* imposes a tax on all retail sales transactions in the State. However, since the statute excludes several types of transactions from the definition of retail sales, LDR initially bears the burden of establishing that the transactions in question fall within the definition of a retail sale. *Bridges v. Geoffrey, Inc.*, 2007-1063 (La.App. 1 Cir. 2/8/08), 984 So.2d 115. In order to meet its burden, LDR counters with the presumption created by La. R.S. 47:314 which provides in pertinent part:

> For the purpose of the enforcement of this Chapter and the collection of the tax levied hereunder, it is presumed that all tangible personal property imported or held in this state by any dealer is to be sold at retail, used or consumed, or stored for use or consumption in this state, or leased or rented within this state, and is subject to the

8

tax herein levied; this presumption shall be prima facie only, and subject to proof furnished to the collector.

LDR is correct that all transactions by a dealer are initially presumed to be retail sales. Therefore, LDR might initially rely on its presumption. At this juncture, the burden rests with the party challenging the presumption. However, the opponent need only convince the trier of fact that his proposed conclusion is more correct than the presumed one. "A presumption does not have any probative value, but merely provides the fact-finder with a conclusion in the absence of proof to the contrary." *Turner v. Turner*, 455 So.2d 1374 (La. 1984) (citation omitted).

> Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear.

*Jones v. LSU/EA Conway Medical Center*, 45, 410 (La.App. 2 Cir. 8/11/10), 46 So.3d 205, 211 (quoting *Turner*, 455 So.2d at 1379); *see also In re Leitch*, 32, 021 (La.App. 2 Cir. 3/31/99), 732 So.2d 632, 636.

As a result, Debtor must respond to the presumption with evidence that supports a different conclusion. Assuming that Debtor will offer any evidence to refute LDR's presumption, LDR's presumption will fail as it is merely a proposed conclusion not resting on any particular evidence. The burden will shift back to LDR to provide evidence of its own to establish the nature of the transactions it seeks to tax.

At this point, LDR argues that its affidavits and pleadings suffice as actual admissible evidence of its position. It cites the Court to La. R.S. 13:5034, which provides:

> Whenever the pleadings filed on behalf of the state, or on behalf of any of its officers charged with the duty of collecting any tax, excise, license, interest, penalty or attorney's fees, shall be accompanied by an affidavit of the officer or of one of his deputies or assistants, or of the counsel or attorney filing the same, that the facts as alleged are true to the best of the affiant's knowledge or belief, all of the facts alleged

in the pleadings shall be accepted as prima facie true and as constituting a prima facie case, and the burden of proof to establish anything to the contrary shall rest wholly on the defendant or opposing party.[3]

After auditing Debtor's records, LDR assessed sales taxes on the transactions in question. It then prepared a proof of claim, attaching its audit. It claims that its proof of claim, pleadings, and audits meet its obligations to prove its claims by a preponderance of evidence. Therefore, LDR asserts that it is Debtor's burden to establish, by a preponderance of evidence, that the assessed sales tax is not due. LDR cites *Barfield v. Diamond Construction Inc.*, 51, 291 (La.App. 2 Cir. 4/5/17), 217 So.3d 1211, in support of its position. In *Barfield*, the Court analyzed the burden of proof,

> After the audit and assessment by estimate, which is presumed to be prima facie true, the burden of proof shifted to [the tax payer] to contradict the prima facie showing made by the State.

*Id.* at 1218.

Louisiana law provides for the enforcement of an assessment by ordinary or summary proceeding. When the State elects to collect an assessed tax by summary proceeding, state law allows LDR's pleadings, affidavits sworn to be true and correct, and audits to be given the effect of evidence. La.R.S. 13:5034 is in fact the statute that implements that procedure. However, when the matter is through ordinary process, the rules of evidence apply, and LDR must produce admissible evidence under the applicable rules of procedure in order to carry its burden.

In summary, LDR bears the burden of establishing any transaction is subject to taxation. If a taxpayer maintains records sufficient to make a showing that the transactions audited by LDR are

---

[3] LDR's proofs of claim are signed under penalty of perjury that the claims are true and correct, satisfying La. R.S. 13:5034's requirement. Pursuant to F.R.B.P. 3001(f) they also "constitute prima facie evidence of the validity and amount of the claim[s]." However, LDR cannot shift the burden of proof simply by filing a verified pleading.

excluded under La. R.S. 47:301(10)(g), in most cases, extrinsic evidence to establish the exclusion will not be necessary. The burden will fall on LDR to prove why the transactions do not meet the parameters of the exclusion by a preponderance of evidence. However, if the taxpayer's records are insufficient to support the exclusion on their face, the presumption that the transactions are subject to tax arises, and the taxpayer bears the burden of rebutting the presumption. As a consequence, the burden will shift to Debtor to prove that the transactions are not retail sales. Once Debtor introduces evidence sufficient to rebut LDR's presumption, it will be incumbent upon LDR to establish by preponderance of evidence that the exclusions do not apply.

Although the parties request that this Court detail what proof might be necessary to carry their burdens, the Court will not speculate on the answer to this question.[4]

### C. The Inclusion of Freight Charges in the "Sales Price" under La. R.S. 47:301(13)(a)

The Joint Statement of Uncontested Material Facts provides, "In certain instances, Debtor delivered the clay to some of its customers' work sites." P-221, ¶ 5. LDR maintains that when delivery or freight charges are included on the sales invoice, they are taxable pursuant to La. R.S. 47:301(13)(a). The statute provides:

> "Sale price" means the total amount for which tangible personal property is sold, less the market value of any article traded in including any services, ... and includes the cost of materials used, labor or service costs, ...

---

[4] LDR cites the Tax Board's Judgment in Debtor's case against St. John the Baptist Parish Sales and Use Tax Office ("St. John") as controlling the facts of this case. P-216, Exh. 11. On November 7, 2017, it was determined that the Judgment was appealable, provided the appeal was filed no later than May 9, 2019. Adv. no. 17-1050, P-18. Debtor has represented that it has lodged an appeal The judgment is not final and, therefore, not controlling.

La. R.S. 47:301(13)(a) does not specifically include freight charges as a component of the sales price. LDR relies on La. Admin. Code title 61, Pt. I, § 4301 which provides that "[c]osts included in the sales price are":

> (a). materials used;
>
> (b). resale inventory;
>
> (c). freight or shipping costs from the supplier to the vendor, or from the vendor to the customer where the transportation by the vendor is an essential or necessary element of the agreement of sale, as would normally be true in transactions for the sale and delivery of ready-mixed concrete or similar products.
>
>         \*        \*        \*
>
> (ii). The following are examples of charges not considered part of the sales price because they are not related to costs incurred by the vendor to bring the product to market:
>
>> (a). freight, shipping, or delivery charges from the vendor or the vendor's agent directly to the customer after the sale has taken place when the following two conditions are met:
>>
>> (i). the seller of the tangible personal property separately states the charges for the actual delivery or transportation of the sold property from the place of the sale to the destination designated by the purchaser;
>>
>> (ii). on the invoices for the sale and transportation of tangible personal property, the place of the sale of the property, and the fact that the transportation is rendered subsequent to the sale and purchase for the buyer's account, must be clearly determinable; ...

LDR maintains:

> [F]or freight charges not to be included in the sales price: (i) they must be incurred after the sale of the material is completed; (ii) there must be a separately stated charge for delivery from the place of sale to the destination designated by the purchaser; and (iii) it must be clearly determinable from the invoices where the sale occurred and the fact that is transportation is rendered subsequent to the sale and purchase.

P-216, p. 19.

Although LDR enacted La. Admin. Code title 61, Pt. I, § 4301, "[t]ax regulations cannot extend the taxing jurisdiction of the statue, as taxes are imposed by the legislature, not the Department." *GameStop, Inc. v. St. Mary Parish Sales and Use Tax Dept.*, 2014-0878 (La.App. 1 Cir. 3/19/15), 166 So.3d 1090, 1096 n. 6 (citing *UTELCOM, Inc. v. Bridges,*, 10-0654 (La.App. 1 Cir. 9/12/11), 77 So.3d 39, 49). LDR's claim must derive from State law not its own regulations.

In *Pensacola Construction Co. v. McNamara*, 558 So.2d 231 (La. 1990), Pensacola Construction Co. ("PCC") purchased stone from Reed Crushed Stone Co. ("Reed"), which was located in a different state. PCC arranged for two (2) different barge companies to transport the stone, but Reed coordinated delivery and paid the barge companies. Reed billed PCC separately for the stone and freight. LDR assessed a "use tax" against Pensacola for freight charges. The Louisiana Board of Tax Appeal found in favor of LDR. On appeal, the trial court overturned the Board's decision, ruling that the freight charges were not part of the cost of the stones and, therefore, not subject to use tax. The appellate court affirmed, ruling that a use tax on interstate freight violated the Commerce Clause. The Louisiana Supreme Court granted a writ.

The Louisiana Supreme Court held that the use tax imposed on freight by La. R.S. 47:301(3)(a) was unconstitutional "because there is no parallel assessment of sales tax" in section 301(13)(a). Although not necessary to the holding, the Supreme Court also indicated that freight charges are not part of the statute and, therefore, not subject to tax.

In *Pontchartrain Materials Corp. v. Plaquemines Parish Govt.*, 2003-1444 (La.App. 4 Cir. 3/31/04), 871 So.2d 1171, Pontchartrain Materials Corp. ("Pontchartrain") sold aggregate materials. Delivery was provided by either the customer or Pontchartrain. When delivered by Pontchartrain, a separate charge for delivery appeared on the invoice. Plaquemines Parish ("Plaquemines") sued

Pontchartrain for sales taxes not paid on the freight charges. Plaquemines had a tax ordinance identical to La. R.S. 47:301(13)(a).

In discussing the question, the Fourth Court found that the freight charge was not part of the sales price and not taxable. The Court found:

> The plain language used to define sales price does not provide for the inclusion of transportation and freight charges as part of its taxable base.

*Id.* at 1175 (citing La. R.S. 47:301(13)).

In *LDR v. Apeck Construction, Inc.*, 2017-738 (La.App. 3 Cir. 2/28/18), 238 So.3d 1045, the Third Circuit adopted *Pontchartrain's* ruling when considering the question under state law. It held:

> The fourth circuit, in [*Pontchartrain*] found that freight charges were not part of the "sales price" for purposes of imposing tax. The basis for the ruling is that "[t]he plain language used to define sales price does not provide for the inclusion of transportation and freight charges as part of its taxable base." The fourth circuit looked to the language in our Legislatively-created La. R.S. 47:301(13)(a) to reach this conclusion.
>
> LDR's argument that "freight in" constitutes overhead that becomes part of the sale price is not based on Legislatively-created law, nor its it based on jurisprudence.

*Apeck,* 238 So.3d at 1054 (quoting *Pontchartrain*, 871 So.2d at 1175).

This Court finds the rationale of the Third and Fourth Louisiana Circuit courts, and the *dicta* provided by the Louisiana Supreme Court, persuasive. As such, it finds that the definition of "sales price" in La. R.S. 47:301(13)(a) does not include freight when it is separately itemized.

**D. The Burden of Proving an Illegal Tax**

The Joint Statement of Uncontested Material Facts makes no mention of equipment rented out of state. However, both Motions for Summary Judgment allege that Debtor rented equipment from a Mississippi company. P-214, p. 20; P-216, p. 20. The parties dispute whether these

transactions occurred in Louisiana or Mississippi and who must prove where the transactions took place.

Debtor avers that it legally paid tax in Mississippi and is entitled to a credit equal to the tax already paid on any use tax assessed by LDR. LDR alleges that the sales tax paid in Mississippi was illegal. As such, it asserts that Debtor is not entitled to any credit and must recover the tax paid from Mississippi.

La. R.S. 47:303(A)(2) imposes a tax "[o]n all tangible personal property imported, or caused to be imported, from other states..." La. R.S. 47:303(A)(3) provides:

> A credit against the use tax imposed by this Chapter shall be granted to taxpayers who have paid a similar tax upon the sale or use of the same tangible personal property in another state. The credit provided herein shall be granted only in the case where the state to which a similar tax has been paid grants a similar credit ... The proof of payment of a similar tax to another state shall be made according to the rules and regulations promulgated by the secretary. ...

A credit is owed on Louisiana's tax when the tax paid to the other state was legally owed. *J. Ray McDermott, Inc. v. Morrison*, 96-2337 (La.App. 1 Cir. 11/7/97), 705 So.2d 195, 205.

LDR's claim is based on an allegation that Mississippi's taxes were illegally assessed.

> [T]here is a presumption in favor of legality and regularity of acts of public officials. The burden of proof therefore falls on those who attack such acts to show that they were not carried out in accordance with law.

*River Cities Const. Co., Inc. v. Barnard & Burk, Inc.*, 413 So.2d 666 (La.App. 1 Cir. 1982). Assessment of tax is not presumed to be illegal. As such, LDR bears the burden of proving that the transaction giving rise to the tax was a Louisiana lease and improperly assessed by Mississippi.

15

### E. Assessed But Uncollected Sales Taxes

LDR asserts that Debtor owes sales tax on transactions in which it failed to collect the tax.

La. R.S. 47:304 provides:

C. Dealers shall, as far as practicable, add the amount of the tax imposed under this chapter in conformity with the schedule or schedules to be prescribed by the collector pursuant to authority conferred herein, to the sale price of charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts. Any dealer who neglects, fails, or refuses to collect the tax herein provided, shall be liable for any pay the tax himself.

*     *     *

I. The sums of money collected by the dealer for payment of sales and use taxes imposed by the state of Louisiana, ... shall be and remain the property of the taxing authority and deemed held in trust for the taxing authority.

La. R.S. 47:304 is clear that if a dealer fails to collect sales tax, the dealer must pay the tax itself and that all sums collected are property of the state held in trust by the dealer.

The only defense to a failure to collect a tax legally owed occurs when the item is returned to the dealer. In that case, La. R.S. 47:315 provides that the dealer is entitled to a credit or refund of the tax. Debtor asserts that in some cases, the amount of product sold was disputed by the purchaser. As a result, the actual amount of clay sold was less than invoiced. Provided Debtor establishes that a lesser amount of clay was actually sold than was invoiced, the sales tax assessed on the invoice would have to be decreased. Sales tax is based on retail sales of product. For the portion of product not delivered, no sale occurred. Ergo, no tax is due.

### IV. Conclusion

La.R.S.47:301(10(g) excludes from the definition of retail sales, certain transactions with the United States government. As an exclusion, it is liberally construed in favor of the taxpayer.

The burden of proof is on LDR to establish that the transactions in question are retail sales subject to tax. That burden might be initially met through the presumption created by La. R.S. 47:314. However, if Debtor offers evidence to establish facts sufficient to support a contrary conclusion, LDR's presumption will be defeated. It will then be LDR's burden to establish by preponderance of the evidence that the exclusion does not apply.

Separately stated freight charges are not included in the sales price subject to sales or use tax.

The burden is on LDR to establish that an out of state tax was illegally assessed.

The dealer is liable for sales tax on completed retail sales.

A separate, Partial Judgment will be rendered in accord with this Opinion.

New Orleans, Louisiana, June 19, 2018.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge